UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

SECURITIES AND EXCHANGE COMMISSION,
                    Plaintiff,                  21-cv-4791 (JGK)

          - against -                           ORDER

TREVON BROWN, ET AL.,
                    Defendants.
───────────────────────────────

JOHN G. KOELTL, District Judge:

   The Court received the attached correspondence, which it forwards to counsel for the parties.

SO ORDERED.
Dated:    New York, New York
          October 18, 2024

                                    /s/ John G. Koeltl
                                    ──────────────────────────
                                       John G. Koeltl
                                    United States District Judge

October 16, 2024

**Dear Judge Koeltl,**

I am writing to inform the Court that I mailed paperwork to Your Honor yesterday. While I believe I signed all of the documents, I experienced some confusion at the post office, and to ensure there are no issues, I am re-mailing the same documents today with my signature to be absolutely certain everything is in order.

Thank you for your understanding.

Sincerely,

Michael Noble

9416 Canalino Drive

Las Vegas, Nevada 89134

*[signature]*

Michael E. Noble
9416 Canalino Drive
Summerlin, Nevada 89134

The Honorable John G. Koeltl
United States District Judge
United States District Court
500 Pearl Street
New York, NY 10007-1312

Re:   *SEC v. Brown*, et al.; 21 Civ. 4791 (JGK) (S.D.N.Y.): Response to Order to Show Cause (Dkt. No. 100) and SEC's Motion for Monetary Relief

Dear Judge Koeltl,

I respectfully submit this letter in response to the Order to Show Cause (Dkt. No. 100), the Declaration submitted by David Lam, and the SEC's Memorandum of Law in support of its Motion for Monetary Relief. I request that the Court consider my concerns regarding Mr. Lam's findings and the inaccuracies within them, as well as the background information presented below.

I.   **Background Information**

I would like to provide some personal background information as context for the case before you. I am 55 years old and a 1992 graduate of East Carolina University, where I earned a degree in communications. As the father of two children I work intensely to support my wife and children. I currently live in Nevada and working 2 jobs to support my family. Also I previously worked in sports most of my life as an announcer for pro sports teams and the Olympics. Also I was in Los Angeles working in TV Production as an associate producer for NBC and FOX networks as well as running my own business a video production company Rattle It Productions. I am working currently in sales for a tech company SandStar AI Retail and flying drones for an inspection company, Bees 360.

1

I am a devoted father and an active member of my community, serving as the head coach of my 9-year-old son's baseball team. My son dreams of one day attending a great University and playing baseball and working hard every day to make good grades. In addition to coaching, I regularly attend services at St. John's Greek Orthodox Church, where my faith helps guide me through life's challenges. My daughter, 19 is a sophmore at Virginia Tech, and I am working hard to support her education while providing for my family's future.

Since this legal matter began, I have struggled with the stress and uncertainty it has caused, severely impacting my ability to sleep and function normally for nearly five years. Despite working two jobs. I am barely making ends meet to provide for my family, save for our future, and one day hopefully achieve the dream of homeownership. I am working 50 – 60 hours a week and my involvement with Bitcoin has literally wiped me out financially as I have a negative net worth and owe the IRS over 194K in taxes which I am working with them to pay pursuant to a payment plan. This ordeal has not only impacted me financially but has also taken a severe toll on my mental health and emotional well-being.

## II. Lack of Knowledge or Intent to Defraud

My involvement with Bitconnect was in good faith, based on its widespread promotion and the hundreds of videos published daily on platforms like YouTube. At the time, there was no indication to me or the public that the platform was operating unlawfully. I ceased creating promotional content as questions were raised about its legitimacy, demonstrating my intent to act lawfully. I am not 100% about the exact days of being involved but to the best of my knowledge it was around 8 months and I stopped mentioning Bitconnect as my YouTube channel was mainly a Crypto News channel about what is going on in the news and not a beginning to end promotion of Bitconnect.

Additionally, I did not seek the role of regional promoter voluntarily; it was assigned to me.

### III. Bitcoin Left on Platforms and the SEC's Disgorgement Claim

There was $340,000 was left in my account, this amount was BCC which was the platform's personal cryptocurrency. This was lost when the platform shutdown this was never accessed – the funds were tied up on the Bitconnect platform when it collapsed, as well as on exchanges like Bittrex and HitBTC, which were shut down as part of regulatory enforcement. I am not sure of the exact amount as I do not have the trading platforms ledger. I respectfully submit that these funds should not be included in any disgorgement order, as they were beyond my control and were ultimately lost due to external factors. In short, I never accessed, benefitted or profited from these funds which the SEC is seeking to disgorge from me.

### IV. Existing Tax Obligations

I want to bring to the Court's attention that I withdrew Bitcoin through BitPay and am currently paying federal taxes on those withdrawals. I owe $194,475.26 in back taxes, and I have been fully compliant with my tax obligations. This disgorgement order once executed will not only render me unable to live and care for my family as well as unable to meet my tax obligations and it is intent to stay compliant with all tax regulation.

### V. Full Compliance with the SEC Over the Last Five Years

From the beginning, I have cooperated with the SEC's investigation and have not resisted any part of the process. Over the past five years, I have cooperated completely, even when asked to sign and re-sign paperwork multiple times. I participated in an eight hour deposition, during which I answered all questions fully and honestly. My cooperation has been consistent and transparent.

## VI. Disassociation from Cryptocurrency

Since the collapse of Bitconnect, I have fully disassociated myself from cryptocurrency platforms, investments, or any form of involvement with cryptocurrency. I do not hold any Bitcoin in hard wallets, paper wallets, or on any platforms. I have a regulated Kraken account but less that 100 in cryptocurrency that I have not logged into for months.

After the sheer embarrassment of believing I was acting as a responsible leader, husband, and father, I have been deeply humiliated. This experience has led me to strongly believe that cryptocurrency holds nothing but negative consequences for anyone involved. I have no intention of ever engaging in cryptocurrency again.

## VII. SEC's Pressure to Settle and the Prejudgment Interest Demand

Throughout this process, the SEC has pressured me to settle, proposing severe financial penalties that would devastate my family. I have consistently refused because I believe the full truth needs to be heard in court. I cannot, in good conscience, agree to a settlement that would impose life-altering penalties, especially when I did not knowingly engage in any fraudulent activity.

The SEC's demand for $293,000 in prejudgment interest is excessively harsh. This demand is particularly unjust, as the SEC pleaded with me to sign a stay order, which delayed my opportunity to resolve this matter in court. The SEC's own actions have delayed the resolution, and now they are asking for hundreds of thousands of dollars stemming from the delay.

## VIII. Legal Precedents Supporting My Defense

In *"Liu v. SEC"*, 140 S. Ct. 1936 (2020), the Supreme Court clarified that the SEC's disgorgement authority is limited and must be proportional. Disgorgement funds must be returned to victims, not simply taken by the SEC. Since the funds in question were lost on platforms that

were shut down, they should not be considered available for return, nor should they be part of any disgorgement calculation.

## IX. Response to the Order to Show Cause (Dkt. No. 100)

In light of the Order to Show Cause (Dkt. No. 100), I respectfully request that the Court consider my arguments regarding the inaccuracies in the SEC's accounting systems, the inaccessible funds left on platforms, and the concerns over the integrity of the consent documents. I also ask the Court to weigh my full cooperation with the SEC over the past five years, my lack of intent to defraud, my compliance with tax obligations, the fact that this matter has weighed on me and my family for the last five years while I agreed to the SEC's request that this matter be stayed, and the disproportionate nature of the SEC's prejudgment interest demand.

I respectfully submit this letter in response to the declaration of David Lam and the findings he has submitted. I believe there are critical gaps and inaccuracies in his analysis that warrant further consideration. Below, I will address several key points of concern:

## X. Lack of Verifiable Evidence

Mr. Lam's findings are speculative and unreliable, particularly regarding the tracking of Bitcoin addresses to Bitconnect. He references at least 13 addresses allegedly connected to Bitconnect but fails to demonstrate how these addresses are directly tied to Bitconnect's servers. Mr. Lam has not provided the necessary server data to support his claims, which leaves his conclusions unsubstantiated. He states that there are 505,062 addresses, yet does not show any connection between these addresses and Bitconnect's operations. Without server data, these findings remain speculative.

### A. Use of Public Information without Proper Verification

Mr Lam relies heavily on public information, but he has not used any specialized tools or methodologies to trace blockchain transactions back to Bitconnect. Instead, he relies on public sources like blockchain.com, which cannot be trusted as 100% accurate without further verification. This reliance raises significant concerns about the accuracy of his analysis. Additionally, Mr. Lam does not account for the use of potential Hierarchical Deterministic (HD) wallet structure, which generates multiple key pairs from a single seed phrase. His failure to acknowledge this undermines the credibility of his tracing methods, as HD wallets are a critical aspect of cryptocurrency transactions that can obscure the origins of funds.

### B.    Incomplete Clustering and Lack of Private Keys

In his declaration, Mr Lam has not provided the private keys necessary to definitively link the Bitcoin addresses he references to Bitconnect. Without these keys, there is no way to verify the actual source of the addresses. His use of clustering techniques is also problematic. Just because multiple addresses are part of a "cluster" does not prove that they belong to the same entity. The speculative nature of clustering without further proof means that Mr. Lam's findings fall short of demonstrating a clear connection between the addresses and Bitconnect.

### C.    Misleading Data Interpretation and Unsupported Graphs

In his report, particularly in Figure 3, Mr Lam presents graphs that lack the specific data needed to verify their accuracy. The graphs provide no detailed transactional data and do not show where the transactions originated or where they were received. Without specific, verifiable addresses and corresponding blockchain data, the graphs are speculative and cannot be considered reliable evidence.

Moreover, Mr Lam admits that there could be more clusters than the 13 he identified, raising questions about the completeness of his investigation. If there are additional clusters, why have they not been located? This omission further undermines his findings.

### D.   Over-reliance on Public and Social Media Sources

Mr Lam's reliance on public sources such as Reddit, Bitcoin Talk, YouTube tutorial videos, and other social media platforms is highly concerning. These sources cannot be considered reliable for the purposes of legal proceedings. Without verifiable, private data linking the addresses to Bitconnect, the information from public forums is speculative and unreliable as evidence.

### E.   Failure to Address Bitconnect's Use of BCC Tokens

Mr Lam's findings focus almost exclusively on Bitcoin transactions without acknowledging that Bitconnect primarily used BCC tokens as its currency. These tokens were sent and received within the Bitconnect platform and could be exchanged for Bitcoin, but Mr. Lam fails to account for any BCC transactions in his report. Where is the evidence of BCC token transactions, and why are they not part of his analysis? Without this information, his findings are incomplete.

### F.   Inaccuracies Regarding Bitcoin Tracing and Lost Funds

Mr Lam and the SEC claim that I received 80+ bitcoins through Bitconnect, but he has provided no clear evidence linking these transactions to Bitconnect's servers. Furthermore, many of these transactions were part of other platforms, like Bittrex and HitBTC, which were shut down without notice, resulting in significant financial losses.

Additionally, there are errors in the tracing of transactions. For example, Item 24 of Mr Lam's report fails to account for the 340,000 BCC tokens left on the Bitconnect platform when it shut down. Bitconnect showed users the value of their BCC tokens in USD, but I did not convert

7

these tokens to Bitcoin before the platform collapsed, leading to a complete loss of those funds. It is deceiving showing transactional hash in item 1 from my digital wallet address to Bitpay that it came from Bitconnect.

### G.  Misrepresentation of Financial Activity and Compliance

It is essential to note that I have always been forthcoming with the SEC and have complied with their requests from the beginning. Despite this, Mr Lam's report implies that I withheld information, which is not accurate. I have cooperated fully, including participating in an 8-hour deposition, signing documents multiple times, and resubmitting paperwork upon request of the SEC. Yet, Mr. Lam's report failse to acknowledge my cooperation.

In Item 25, Mr. Lam claims I had other accounts on crypto asset trading platforms, but he has failed to identify them. I was removed from platforms like Coinbase and Gemini without explanation, and I lost substantial funds when platforms like HitBTC and Bittrex shut down. These lost funds were not converted to fiat currency and should not be included in any disgorgement calculations.

### H.  Excessive Penalties and Prejudgment Interest

As noted, the SEC's demand for $293,000 in prejudgment interest is excessive, especially considering the delays stemmed from the SEC's own stay order requests me to agree to. I was ready and willing to proceed with this matter, but the SEC's request for a stay postponed my opportunity to have this case promptly heard in court. The proposed penalties are harsh given that I have already lost substantial amounts of Bitcoin and have been paying taxes on the little I was able to withdraw.

I. I lost upwards of 50+ bitcoins on exchanges like Bittrex, HitBTC, Gemini, and Binance when they collapsed, yet this loss is not reflected in the SEC's report. Additionally, I

8

gave away 11+ bitcoins, but there is no record of that in their findings. The SEC is asserting that every bitcoin I earned or sent to BitPay originated from Bitconnect, which is simply not true. While they reference a transaction hash from my digital wallet, which I willingly provided, they fail to show the full scope of transactions. Many of the bitcoins transferred to BitPay were derived from trading activities, and I still owe taxes to the Internal Revenue Service on those transactions.

J. I am unable to access the platforms that were shut down by the SEC to retrieve complete accounting ledgers. I wish I had the ability to track everything and demonstrate that the SEC's claims are inaccurate. I do not have the resources that the SEC does to locate these ledgers, and Bitconnect's accounting, based on photocopied documents, in my opinion, cannot be fully trusted. How can a platform labeled as a scheme be trusted for certain evidence while disregarded in other contexts? While it is true that BitPay was funded, it was not entirely from Bitconnect, and it feels unjust for the SEC to make this assumption. Furthermore, where are the private keys and server data from Bitconnect to substantiate that these transactions are definitively tied to Bitconnect?

K. Referring to "Document 96-6" I see what appears to be my digital wallet address and transaction hash. That document to me is misleading as it does not state where it came from in the transaction hash. My BitPay account was used to convert bitcoin to fiat but it was not all from Bitconnect as this document appears to state. It is also unknown if there are no private keys to prove this location. It appears to be negligence in the accuracy or the provided data.

**XI. Conclusion:**

9

I respectfully request that the Court take the foregoing information into account when evaluating Mr Lam's findings and the SEC's request for monetary relief. I consider myself a victim of this fraud

Thank you for your time and consideration. I am grateful for the opportunity to present this letter and for the time you have taken to hear my concerns. I respectfully ask that the Court consider these factors when determining a fair and just outcome.

This the __15th__ day of October, 2024.

Michael E. Noble
9416 Canalino Drive
Summerlin, Nevada 89134